[Civil No. 1253. Filed November 23, 1912.]

[128 Pac. 52.]

## CHARLES W. BUSH, Appellant, v. ROBERT E. ROOT, Appellee.

SPECIFIC PERFORMANCE—PLEADING—VARIANCE.—Where a complaint in a suit for specific performance alleged an agreement to pay the purchase price to J. on defendant's indebtedness to him, and that such payment to J. was made in pursuance of the agreement, while the evidence showed that the agreement was made as part of an arrangement by which plaintiff, defendant, and others were to purchase J.'s rights under a contract with a patentee, but that defendant dealt entirely with plaintiff and had no dealings with J., and that plaintiff paid the money to J. with the understanding that he would be reimbursed therefor by defendant, the cause of action alleged was not proved, and a judgment for defendant was supported by the evidence.

APPEAL from a judgment of the District Court of the Second Judicial District, in and for the County of Cochise. Fletcher M. Doan, Judge. Affirmed.

The facts are stated in the opinion.

Mr. Lyman H. Hayes, for Appellant.

Mr. John C. Gung'l, for Appellee.

McALISTER, J.—This action was brought in the district court of Cochise county by Charles W. Bush, appellant, to compel specific performance by Robert E. Root, appellee, of an alleged contract to convey to the appellant certain real estate in the town of Wilcox, Arizona. Judgment was entered for the defendant, and from said judgment and order denying appellant's motion for a new trial this appeal was taken.

We gather from the record in the case that on the eleventh day of October, 1909, certain persons in the town of Wilcox, Arizona, formed a company called "The C. B. Currier Company," for the purpose of buying from C. L. Jackson, of San Antonio, Texas, through the latter's agent, J. W. Jordon, a patentee's contract for a crude oil burner for a stove, which gave the Wilcox company the right to sell the oil burners and other contracts, conferring upon the purchasers thereof the right to sell the burners. The price to be paid for the contract was $5,000, and said Jackson, through his agent, Jordon, offered to accept in part payment of the patentee's contract a farm owned by appellant in Oklahoma for a consideration of $3,000. Appellant, who was desirous of taking a one-fifth interest in the contract amounting to $1,000, was willing to deed his Oklahoma farm for $3,000 if others of "The C. B. Currier Company" would agree to reimburse him for the two-fifths interest for which his farm would pay above the interest he himself was taking. The appellee, Root, told Bush that he would take a one-fifth interest for $1,000 if Bush would accept some real estate appellee owned in Wilcox in payment of the same. Root, however, demanded $200 additional for the real estate, and appellant agreed to give him $1,200 for his real estate, which was to be paid for by a one-fifth interest in the oil burner contract and his note for $200. Bush conveyed his Oklahoma farm to Jordon, the agent of Jackson, on the said eleventh day of October, 1909, in payment of $3,000 on the oil burner contract. In January, 1910, the oil burner contract was returned to Wilcox, from San Antonio, where it had been taken for the purpose of being sealed, showing that it had been executed in favor of the parties who composed the C. B. Currier Company, appellee's name appearing therein as the owner of a one-fifth interest. In January, 1910, Bush requested Root to convey to him the Wilcox real estate as agreed, but Root refused to do so. In April, 1910, Bush

offered Root the $200 he had agreed to pay, which being refused his promissory note for said amount was then offered and also refused, after which a deed to the real estate was again demanded, and again appellee said he would not convey. Suit was then filed asking that appellee, Root, be compelled to deed appellant the real estate in question, or, in lieu thereof, that appellant be given judgment for $1,000 in damages.

No formal judgment in the case appears of record, but only the minute entry showing that the court entered judgment for the defendant. There were no findings of fact nor conclusions of law. We are unable, therefore, to ascertain whether the ruling granting judgment for the defendant turned on a question of law or of fact or both. The errors assigned are: That the evidence does not sustain the judgment; that the judgment is contrary to the law; that the judgment is contrary to the evidence; and that the court erred in denying appellant's motion for a new trial.

We are asked to reverse the lower court upon the ground that the facts do not sustain the judgment. After a careful examination of the record in the case, including the evidence, we are of the opinion that the action of the trial court in granting judgment for defendant was correct. It is alleged in the complaint that on the eleventh day of October, 1909, "the plaintiff and defendant entered into an agreement whereby defendant agreed to sell and plaintiff agreed to purchase the aforesaid property for the sum of twelve hundred ($1,200) dollars, in payments as follows, to wit: The sum of one thousand ($1,000) dollars to be paid on said eleventh day of October, 1909, to one C. L. Jackson, of San Antonio, Texas, doing business under the name of the 'Little Crater Crude Oil Burner Company,' to whom the said defendant was then and there indebted in the sum of $1,000, to be applied as a credit on and in full payment of said defendant's indebtedness to said C. L. Jackson, and for the remaining sum of $200." It is further alleged "that on the said eleventh day of October, A. D. 1909, plaintiff paid to said C. L. Jackson for said defendant and in payment of defendant's aforesaid indebtedness to said C. L. Jackson the said sum of $1,000 in pursuance of the aforesaid agreement made and entered into between the plaintiff and defendant." There is an entire absence from the record of any evidence tending to show that there was an agreement

between the appellee and C. L. Jackson regarding a purchase by the former of an interest in the "Little Crater Crude Oil Burner" contract. Jackson was never in Wilcox, and his agent, Jordon, did not even speak to appellee about taking an interest. Neither is there any evidence to show that Root authorized anyone to act for him in dealing with Jordon in reference to the said contract. The facts clearly disclose that Bush and Root dealt with each other, that Bush purchased the one-fifth interest in question, and paid for it with the understanding that appellee would afterward reimburse him for it. Appellee's statement, which is not contradicted and which is borne out by the other testimony in the case, is: "I told him [Bush] he could buy the interest, and I would buy of him." It is undisputed that appellee was in no way indebted to Jackson at any time. Appellant could not, therefore, have "applied the $1,000 as a credit on and in full payment of said defendant's indebtedness to Jackson." The allegation in the complaint that "plaintiff paid to said C. L. Jackson for said defendant, and in payment of defendant's aforesaid indebtedness to said C. L. Jackson the said sum of $1,000," is not sustained by the evidence. Appellant could not have deeded his land in Oklahoma to Jordon as the agent of Jackson, with the understanding that it was paying, among other obligations, a $1,000 debt due Jackson by Root, for there is no evidence that such indebtedness ever existed, but it clearly appears that it did not exist.

It is evident from what we have said that the proof does not conform to the allegations of the complaint. It follows necessarily that the judgment of the trial court is sustained by the evidence.

The judgment is affirmed.

FRANKLIN, C. J., and ROSS, J., concur.

N. B.—CUNNINGHAM, J., being disqualified, and announcing his disqualification in open court, the remaining judges, under section 3 of article 6 of the constitution, called in Hon. A. G. McALISTER, Judge of the superior court of the state of Arizona, in and for the county of Graham, to sit with them in the hearing of this cause.

---

NOTE.—As to the nature and grounds of the remedy of specific performance, see note in 140 Am. St. Rep. 56.